Citation Nr: 1722383 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 13-10 917 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Des Moines, Iowa


THE ISSUES

1. Entitlement to service connection for a bilateral foot disability.

2. Entitlement to service connection for a low back disability, on a direct basis. 

3. Entitlement to service connection for a low back disability as secondary to service-connected diabetic peripheral neuropathy. 

4. Entitlement to service connection for sciatic nerve damage/radiculopathy of the bilateral lower extremities, to include as secondary to a low back disability. 


REPRESENTATION

Appellant represented by: Disabled American Veterans




WITNESS AT HEARING ON APPEAL

The Veteran and his spouse

ATTORNEY FOR THE BOARD

Devon Rembert-Carroll, Associate Counsel


INTRODUCTION


The Veteran served on active duty from April 1967 to March 1974. He is the recipient of numerous awards and decorations, including the Combat Action Ribbon.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2014 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Des Moines Iowa. 

The Veteran testified at a Board videoconference hearing in September 2016 and a copy of that transcript is of record. 

In a February 2017 decision, the Board denied entitlement to service connection for a total disability rating based on individual unemployability due to service connected disabilities and remanded the issues noted on the title page for further development. 

After the most recent March 2017 supplemental statement of the case, additional VA treatment records dated to April 2017 were associated with the Veteran's file in conjunction with another claim. AOJ consideration of these records has not been waived. However, as these records are not pertinent to the issues on appeal, waiver of AOJ consideration is not necessary. 38 C.F.R. § 20.1304 (c) (2016). 

As seen on the title page, this decision bifurcates the issue of service connection for a low back disability into separate issues: (1) entitlement to service connection for a low back disability on a direct basis, and, (2) entitlement to service connection for a low back disability as secondary to service-connected diabetic peripheral neuropathy. See Locklear v. Shinseki, 24 Vet. App. 311 (2011) (bifurcation of a claim generally is within VA's discretion); Tyrues v. Shinseki, 23 Vet. App. 166, 178-79 (2009), aff'd, 631 F.3d 1380 (Fed. Cir. 2011) (holding that it is permissible to bifurcate a claim and to adjudicate the distinct theories of entitlement separately).

This appeal was processed using the Veteran's Benefits Management System (VBMS). A review of the Veteran's Virtual VA claims file reveals VA treatment records dated January 2006 to April 2017. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of entitlement to service connection for a low back disability on a secondary basis and entitlement to service connection for sciatic nerve damage/radiculopathy of the bilateral lower extremities are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran's bilateral foot disability did not manifest during, or as a result of military service; and is not etiologically related to his service-connected diabetic peripheral neuropathy mellitus. 

2. The Veteran's low back disability did not manifest during, or as a result of military service. 



CONCLUSIONS OF LAW

1. The criteria for service connection for a bilateral foot disability have not been met. 38 U.S.C.A. §§ 1110, 1112, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309, 3.310 (2016).

2. The criteria for service connection for a low back disability on a direct basis have not been met. 38 U.S.C.A. §§ 1110, 1112, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to provide the Veteran notification of the information and evidence necessary to substantiate the claim submitted and the division of responsibilities in obtaining evidence, pursuant to the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. § 5103 (a); 38 C.F.R. § 3.159 (b). Here, the claims of entitlement to service connection for a bilateral foot disability and sciatic nerve damage/radiculopathy of the bilateral lower extremities were filed as a fully developed claim via a September 2013 VA Form 21-526EZ, pursuant to VA's program to expedite claims. In February 2014, the Veteran amended his claim to include entitlement to service connection for a low back disability. The fully developed claim form includes notice of what evidence is required to substantiate a claim, as well as the Veteran's and VA's respective duties for obtaining evidence and information on how VA assigns disability ratings. The notice that is part of the claim form submitted by the Veteran satisfies the duty to notify. 

VA also has a duty to assist the Veteran in the development of a claim. This duty includes assisting the Veteran in the procurement of pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2016). Here, the Veteran's service treatment records, personnel records and post service VA treatment records have been associated with the claims file. Additionally, the Veteran has not identified any records that have not been requested or obtained.

The Veteran was afforded a VA examination in August 2015 and VA addendum opinions in November 2015 and March 2017. In regards to the Veteran's bilateral foot disability and low back disability on a direct basis, the Board finds that the March 2017 addendum and August 2015 opinion, respectively, are adequate because the conclusions are based on clinical evaluations, interview of the Veteran, and review of the Veteran's medical history. See Nieves-Rodriquez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). 

As previously noted, the Veteran was provided an opportunity to set forth his contentions before a Veterans Law Judge in February 2016. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103 (c)(2) requires that a "hearing officer" who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, the Veteran has not raised any deficiency with the hearing. See Dickens v. McDonald, 814 F.3d 1359 (Fed. Cir. 2016).

The Board also finds that the RO has substantially complied with the February 2017 remand directives which included obtaining a VA addendum opinion. See Dyment v. West, 13 Vet. App. 141, 146-147 (1999); see also Stegall v. West, 11 Vet. App. 268 (1998).

The Board thus finds that all necessary development has been accomplished and appellate review may proceed. See Bernard v. Brown, 4 Vet. App. 384 (1993).

Analysis

General Legal Criteria

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C.A. 1110, 1131 (West 2014); 38 C.F.R. 3.303 (a) (2016). 
Service connection may also be granted for chronic disabilities if such are shown to have been manifested to a compensable degree within one year after the Veteran was separated from service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. As an alternative to the nexus requirement, service connection for these chronic disabilities may also be established through a showing of continuity of symptomatology since service. 38 C.F.R. § 3.303(b). The option of establishing service connection through a demonstration of continuity of symptomatology rather than through a finding of nexus is specifically limited to the chronic disabilities listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. See 38 C.F.R. § 3.310 (a); Allen v. Brown, 7 Vet. App. 439, 448 (1995).

Bilateral Feet

The Veteran asserts that his bilateral foot disability was caused by his active duty service. Specifically, the Veteran alleges that his bilateral foot condition is due to his feet being run over by a jeep while he was stationed in Vietnam. See February 2016 Board Hearing. Additionally, the August 2015 VA examination report raised the issue of secondary service connection. 

Turning to the evidence of record, the August 2015 VA examiner diagnosed metatarsalgia, plantar fasciitis, and degenerative arthritis. The March 2017 VA examiner concluded that the Veteran did not have a disability of the right foot and the only disability of the left foot was arthritis. However, after resolving all reasonable doubt in favor of the Veteran, the Board finds that the Veteran has a current diagnosis of a bilateral foot disability, variably diagnosed as metatarsalgia, plantar fasciitis, and degenerative arthritis. 

In regards to an in-service occurrence, at the October 2016 hearing the Veteran essentially testified that his injury occurred in 1968 or 1969 and he continued to have pain and swelling in his feet. He also testified that he was treated with pain medication, placed on profile and was eventually given crutches. The Veteran also testified that while in-service the doctors repeatedly told him that there was nothing that could be done for his feet.

The Veteran's service treatment records reveal a January 1970 report of medical examination that shows that the Veteran's feet and lower extremities were noted as normal. It was noted that the Veteran had defective hearing loss due to weapons use in Vietnam. A January 1970 report of medical history shows that the Veteran denied foot trouble. The Veteran did report mumps and hearing loss. 

A December 18, 1971, service treatment record shows that the Veteran was treated for a large toenail half off with extreme tenderness. The Veteran's toenail was extracted and the Veteran was given a shower shoe and special light duty. A December 20, 1971, service treatment record shows that the Veteran returned with an ingrown toenail. The toe nail was removed and the Veteran was instructed to return to the clinic every day for change of bandage. A December 27, 1971, service treatment record shows that the Veteran was seen for a return visit after removal of a toenail. It was noted that the site was dirty but otherwise was doing fine. 

An April 4, 1973, service treatment record shows that the Veteran was treated for a wart on the right foot. Another April 4, 1973, service treatment record shows that the Veteran was instructed to use a shower shoe for two weeks and was placed on light duty. An April 18, 1973, service treatment record instructed that the Veteran to renew light duty and a shower shoes until an operation on the foot the next day. Another April 18, 1973 service treatment record shows the wart on the Veteran's foot was treated with liquid nitrogen. A May 1, 1973 shows that a wart on the Veteran's right foot was checked and dressed. 

The Veteran's February 1974 separation report of medical examination shows that the Veteran's feet and lower extremities were noted as normal. It was noted that the Veteran had am umbilical hernia and bilateral hearing loss. 

The Board notes that the Veteran's DD-214 shows that he is in receipt of the Combat Action Ribbon. The Board also notes that it is not clear whether the Veteran is alleging that his injury occurred while he was engaged in combat with the enemy. However, after resolving all reasonable doubt in favor of the Veteran, the Board finds that the Veteran sustained, at the very least, a bilateral foot injury during active duty service. See 38 U.S.C.A. § 1154 (b). 

However, based on the above, the Board finds that the Veteran's service treatment records demonstrate that outside of the treatment for ingrown toenail and warts, the Veteran did not suffer from symptoms of the bilateral feet during service as described by the Veteran. 

The Board notes that in order for the Veteran's service treatment records to be used as evidence against the Veteran's claim, the Board must determine both (1) the service treatment records appear to be complete, at least in relevant part, and (2) that the injury, disease, or related symptoms at issue would ordinarily have been recorded had they occurred. See Kahana v. Shinseki, 24 Vet. App. 428, 440 (2011) (Lance, J., concurring) (discussing the distinction between cases in which there is a complete absence of any evidence to corroborate or contradict the testimony, as opposed to cases in which there is evidence that is relevant either because it speaks directly to the issue or allows a reasonable inference to be drawn by the Board as factfinder).

With respect to the first Kahana component, the Board notes that the claims file contains examination reports and medical history records from the Veteran's entrance into and separation from service, as well as records of his medical treatment throughout service. There is no indication that any portion of the Veteran's service treatment records has not been associated with the claims file. The Board therefore finds that the Veteran's complete service treatment records are of record.

With respect to the second Kahana component, the Board finds that that the bilateral foot symptoms, as described by the lay reports of record, are the type of disease for which the Veteran would have sought treatment and such would have been noted, had they occurred. The Board notes that an absence of contemporaneous medical evidence is a factor in determining credibility of lay evidence, but lay evidence does not lack credibility merely because it is unaccompanied by contemporaneous medical evidence. See Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) (lack of contemporaneous medical records does not serve as an "absolute bar" to the service connection claim); see also Barr v. Nicholson, 21 Vet. App. 303 (2007) ("Board may not reject as not credible any uncorroborated statements merely because the contemporaneous medical evidence is silent as to complaints or treatment for the relevant condition or symptoms").

Here, the Veteran specifically denied foot trouble on a January 1970 report of medical history, which is dated after the Veteran's alleged in-service injury. Additionally, the Veteran's separation report reflects that the Veteran was examined and his feet and lower extremities were found to be normal. Furthermore, while the Veteran's service treatment records show that he was treated for warts on his feet and ingrown toenails, the Veteran's service treatment records are otherwise absent of any complaints, treatment or diagnosis of a bilateral foot condition as described by the Veteran. The Veteran's service treatment records show that the Veteran was treated for warts on the right foot, in-groin toenails, a knot on the right side of the stomach, a pulled left leg muscle, stomach pain, edema of the left knee, pain in the ribs, right hip pain, right ankle pain and cramps in the legs. The Board acknowledges that the Veteran's service treatment records show that the Veteran was placed on light duty. However, the Veteran was placed on light duty after wart removals and for conditions not related to his feet. The Board also notes that when the Veteran was treated for the warts on his feet and the in-groin toenails, no notation was made that the Veteran had any other symptoms related to his feet, to include swelling as described by the Veteran. There was also no notation made, and no report by the Veteran, that he had ongoing trouble with his feet. 

The Board further notes that the Veteran's express denial of relevant symptoms after the reported in-service injury, at the very least, shows that he was not having any problems with his feet at the time of the examination conducted after the reported injury. Therefore, the Board finds that the silence of complaints or treatment in the Veteran's service treatment records serves as affirmative evidence that such complaints or treatment did not, in fact, occur.

The Board acknowledges the Veteran's assertions regarding the in-service onset of symptoms. The Board notes that the Veteran, as a layperson, is competent to report on the Veteran's symptoms during his service. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). Nonetheless, these statements appear to be inaccurate recollections of past events, which are much less reliable than the in-service descriptions of his medical condition at that time. In reaching its conclusion, the Board has determined that such statements are inaccurate recollections of a history that occurred approximately four decades earlier, when compared against the more contemporaneous medical records and are thus unreliable and entitled to no probative value.

The Board will now consider whether there is nexus evidence that nonetheless justifies a grant of service connection for a bilateral foot disability on a direct or secondary bases. 

In this regards, a May 1974 VA examination shows that the Veteran's musculoskeletal was noted as normal. It was noted that the Veteran's feet had active dermatophytosis on the palma aspect and long longitudinal arches. His feet were otherwise normal. 

A September 2007 rating decision granted service connection for peripheral neuropathy of the bilateral lower extremities as secondary to diabetes. 

The Veteran was afforded a VA feet examination in August 2015. The examiner concluded that the claimed condition was less likely than not incurred in or caused by the claimed in-service injury, event or illness. The examiner explained that the Veteran's foot pain was more than not related to diabetic peripheral neuropathy and less likely from osteoarthritis pain. The examiner also concluded that the claimed condition was at least as likely as not proximately due to or the result of the Veteran's service connected condition. The examiner explained that the current severity of the service connected condition warrants by proximity, association of the claimed secondary condition. The examiner explained that the disorder began subsequent to the service connected condition and was the direct result of the antecedent condition. The examiner noted that the medical literature supports this and a nexus is established. 

In a November 2015 VA addendum opinion, the examiner concluded that the condition claimed was less likely than not incurred in or caused by the claimed in-service injury, event or illness. The examiner explained that review of the service treatment records showed no evidence of the diagnosis, treatment or foot pathology while on active duty. The examiner concluded that the Veteran's current foot complaints were most likely due to diabetic peripheral neuropathy. 

In a March 2017 VA addendum opinion, the examiner concluded that there was no evidence this condition occurred while on active duty, as service treatment records were silent for any chronic right or left foot complaints. The examiner also concluded that the diabetic peripheral neuropathy less likely than not caused the Veteran's left foot arthritis. The examiner also concluded that the diabetic peripheral neuropathy less likely than not permanently aggravated the arthritis beyond its natural progression. The examiner explained that diabetic peripheral neuropathy may result in atrophy of intrinsic muscles of the foot, with subsequent musculoskeletal issues. The examiner noted that, however review of treatment records and review of physical exams does not support this complication and pathology. The examiner explained that the Veteran's physical exam findings noted by podiatry over the past several years were not consistent with any foot atrophy, and there was no evidence of loss of foot arch or foot drop. The examiner then cited to UPTODATE regarding diabetic polyneuropathy, osteoarthritis of the first metatarsophalangeal (MTP) joint and metatarsalgia. 

Based on the above, the Board finds that the most competent and credible evidence of record is against a finding that the Veteran's bilateral foot disability is in anyway related to the Veteran's military service or to his service-connected diabetic peripheral neuropathy. 

The Board acknowledges the August 2015 VA opinion regarding secondary service connection. However, as the examiner did not state which of the Veteran's service-connected conditions he was referring to, the Board assigns the opinion no probative value in regards to whether secondary service connection is warranted. 

The Board also acknowledges the Veteran's assertions that his bilateral foot disability is related to his military service and or his diabetic peripheral neuropathy. However, determining the nature and etiology of a bilateral foot disability falls outside the realm of common knowledge of a lay person. In this regard, while the Veteran can competently report his symptoms, any opinion regarding whether his bilateral foot disability is related to his military service or a service-connected disability requires medical expertise that the Veteran has not demonstrated. See Jandreau v. Nicholson, 492 F. 3d 1372, 1376 (2007). As such, the Board assigns no probative weight to the lay assertions of record that the Veteran's bilateral foot disability is related to his military service or to a service-connected disability. 

Instead, the Board finds the March 2017 VA addendum opinion to be highly persuasive to the issue at hand. The Board notes that the probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, his knowledge and skill in analyzing the data, and his medical conclusion. As is true with any piece of evidence, the credibility and weight to be attached to these opinions are within the province of the adjudicator. Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). Whether a physician provides a basis for his or her medical opinion goes to the weight or credibility of the evidence in the adjudication of the merits. See Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998). Other factors for assessing the probative value of a medical opinion are the physician's access to the claims folder and the thoroughness and detail of the opinion. See Nieves-Rodriguez, 22 Vet. App. 295 (2008); Prejean v. West, 13 Vet. App. 444, 448-9 (2000).

Here, the March 2017 VA opinion was provided by a VA medical professional who possesses the necessary education, training, and expertise to provide the requested opinion. Additionally, the VA opinion is shown to have been based on a review of the Veteran's record and is accompanied by a sufficient explanation. The Board also finds that based on the above discussion, the March 2017 VA examiner properly relied on the absence of in-service treatment when concluding the Veteran's disability was not etiologically related to his military service. The Board finds that the examiner's rationale that the Veteran's physical exams do not support the complications and pathology resulting from diabetic neuropathy adequately addresses both elements of secondary service connection. As the examiner did not find that the Veteran's diabetic peripheral neuropathy was causing any atrophy of intrinsic muscles of the foot, with subsequent musculoskeletal issues, a reasonable inference can be made that the diabetic peripheral neuropathy was not aggravating the bilateral foot disability. As such, the Board finds that the May 2017 VA addendum is dispositive of the nexus element in this case. 

In regard to continuity of symptoms, the Veteran bilateral foot arthritis is properly afforded such consideration, as arthritis is an enumerated conditions under 38 C.F.R. § 3.309 (a); Walker, 708 F.3d 1331. However, as the most probative evidence of record is against a finding that the Veteran suffered in-service symptoms or a chronic foot disability, service connection based on continuity of symptomatology is not warranted. Additionally, there is no medical evidence or credible lay evidence of record that the bilateral foot arthritis manifested to a compensable degree within one year of the Veteran's discharge from service. See 38 C.F.R. § 3.307 (a), 3.309(a). Indeed, the diagnosis of arthritis is not within the ability of a lay person to diagnose because a competent medical expert could not diagnose the Veteran based on reported symptoms alone and required specialized testing beyond ordinary clinical evaluation. See Mattke v. Deschamps, 374 F.3d 667, 670 (8th Cir. 2004) (providing that a diagnosis by laboratory testing is distinctly not within the realm of common lay knowledge). 

In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).



Low Back - Direct Basis 

The Veteran originally contended that he had a low back condition as a result of his active duty service. However, during the Veteran's October 2016 hearing, he testified that his back condition was the result of his changing gate. As noted above, the theory of secondary service connection will be addressed in the remand portion of this appeal. 

Turning to the evidence of record, the August 2015 VA examiner diagnosed degenerative arthritis of the spine and multi-level lumbar spondylosis. The March 2017 VA examiner concluded that there was no diagnosis of any chronic low back condition. However, after resolving all reasonable doubt in favor of the Veteran, the Board finds that the veteran has a current diagnosis of a low back disability, variously diagnosed as degenerative arthritis of the spine and multi-level lumbar spondylosis. 

Additionally, a May 7, 1973 service treatment record shows that that the Veteran was treated for back pain for the prior two days. The Veteran was prescribed pain medication and light duty. As such, the Veteran's claim turns on whether the Veteran's low back disability is related to his military service. 

In this regards, the Veteran's service treatment records are otherwise absent of any complaints, treatment or diagnosis of a low back condition. The Veteran's February 1974 separation report of medical examination shows that the Veteran's spine and other musculoskeletal were noted as normal. It was noted that the Veteran had an umbilical hernia and bilateral hearing loss. 

A May 1974 VA examination shows that the Veteran's musculoskeletal was noted as normal.

An April 2015 informal DRO hearing shows that the Veteran reported that he was seen in stateside for his back in North Carolina in 1969 and mid-1970s at clinic on base. He reported having x-rays completed. The Veteran also reported that he was treated for his back while stationed in San Diego in the early 70s and Tripler Army "Pink Elephant" Medical Center in Hawaii. 

The Veteran was afforded a VA back examination in August 2015. The examiner concluded that the claimed condition was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The examiner explained that during service the condition was acute only. The examiner explained that there was no evidence of chronicity of care and a nexus had not been established.

Based on the above, the Board finds that the most competent and credible evidence of record is against a finding of service connection on a direct basis for a low back disability. 

First, the Board acknowledges the Veteran's assertions during the April 2015 informal DRO hearing that he was treated stateside for his low back symptoms. While the Veteran is competent to report treatment for his low back symptoms, the Board finds these assertions to be less than credible. As noted above, the Veteran's service treatment records appear to be complete. Additionally, the Veteran's service treatment records only show treatment for a low back condition on one occasion during the Veteran's service. Additionally, records from Tripler Army Hospital show that the Veteran received treatment for an umbilical hernia, not for low back complaints. Finally, on separation, the Veteran's spine and other musculoskeletal were noted as normal. The Board thus finds that the Veteran's current recollections of treatment are inconsistent with the more contemporaneous service treatment records. Therefore, the Board assigns them no probative value in determining in-service treatment for a low back disability. 

The Board also acknowledges the Veteran's assertions that his low back disability is related to his military service. However, the Veteran has not been shown to have the medical expertise to determine the nature and etiology of degenerative arthritis of the spine and multi-level lumbar spondylosis. Therefore, the Board assigns the Veteran's assertions that his low back disability is related to his military service no probative value. 

Instead, the Board finds the August 2015 VA examination to be highly probative to the issue at hand. The August 2015 VA opinion was provided by a VA medical professional who possesses the necessary education, training, and expertise to provide the requested opinion. Additionally, the VA opinion is shown to have been based on a review of the Veteran's record and is accompanied by a sufficient explanation. The Board also finds that based on the above discussion, the August 2015 VA examiner properly relied on the one time in-service treatment for a low back condition when concluding that the in-service injury was acute in nature. Furthermore, there is no competing medical opinion of record. As such, the Board finds the August 2015 VA opinion to be dispositive of the issue of direct service connection in this case. 

In regard to continuity of symptoms, the Veteran low back disability is properly afforded such consideration, as arthritis is an enumerated conditions under 38 C.F.R. § 3.309 (a); Walker, 708 F.3d 1331. However, as the most competent and credible evidence of record shows that the Veteran's in-service complaints were acute in nature service connection based on continuity of symptomatology is not warranted. Additionally, there is no medical evidence or credible lay evidence of record that the Veteran's low back disability manifested to a compensable degree within one year of the Veteran's discharge from service. 

In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. Gilbert, supra.


ORDER

Entitlement to service connection for a bilateral foot disability is denied. 

Entitlement to service connection for a low back disability on a direct basis is denied. 


REMAND

In regards to the issue of entitlement to service connection for a low back disability as secondary to service-connected diabetic peripheral neuropathy the March 2017 VA examiner failed to provide an opinion for secondary service connection as instructed by the February 2017 Board remand directives. See Stegall v. West, 11 Vet. App. 268 (1998). As such a remand is necessary to obtain another opinion. 

Additionally, the Veteran's claim of service connection for sciatic nerve damage/radiculopathy of the bilateral lower extremities as secondary to a low back condition is inextricably intertwined with the remanded claim for service connection. See Harris v. Derwinski, 1 Vet. App. 180 (1991). Thus, adjudication of such claim must be deferred pending the outcome of the Veteran's claim for service connection for a low back condition.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Return the claims file, to include a copy of this remand, to the March 2017 VA examiner for an addendum opinion as to the nature and etiology of the Veteran's low back disability. If the examiner who drafted the March 2017 opinion is unavailable, the opinion should be rendered by another appropriate medical professional. The need for another examination is left to the discretion of the medical. 

The examiner should offer an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran's degenerative arthritis of the spine and multi-level lumbar spondylosis (as diagnosed by the August 2015 VA examiner) was caused by or result from his service-connected diabetic peripheral neuropathy. In this regard, the examiner should consider the Veteran's assertions that his back disability is due to a change in gait. 

The examiner should offer an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran's degenerative arthritis of the spine and multi-level lumbar spondylosis (as diagnosed by the August 2015 VA examiner) has permanently progressed at an abnormally high rate due to or as the result of the his service-connected diabetic peripheral neuropathy. In this regard, the examiner should consider the Veteran's assertions that his back disability is due to a change in gait. 

Each opinion provided must be fully explained with a complete discussion of the evidence of record and sound medical principles, which may reasonably make clear the medical guidance in the study of this case.

2. After completing the above, and any other development as may be indicated by any response received as a consequence of the actions taken in the preceding paragraphs, the Veteran's claims should be readjudicated based on the entirety of the evidence. If any claim remains denied, the Veteran and his representative should be issued a supplemental statement of the case. An appropriate period of time should be allowed for response. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This REMAND must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 
(West 2014).




______________________________________________
DEBORAH W. SINGLETON
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs